Our final case of the day is 2016-1768, MH System v. Coldharbour Marine Limited. Mr. Roush? Nate, who's it for? Brad Roush from the law firm... I said that wrong then, how do you say it? Roush. Roush, got it. I know, that means, quite truthfully, law firm bully and martyr on behalf of compelling MH Systems. I want to address at least three errors in the trial appeal board's decision in the raise three thing. Just three? I mean, you raised so many. I think that's how many all the time we have today. It's unusual to see a brief with this many issues on appeal. Yes, well, it's one of the issues that the final decision covered many different grounds. Ultimately, there were five different rejection grounds covering the decision, and I think below these errors, the right appeal notice noted at least 16 different grounds. So, we'll focus on three. And first, I want to address why the board failed to explain why a person of ordinary skill would have been motivated to combine any of the prior references. Second, I want the board improperly dismiss Pat Nutter's evidence of secondary considerations, and in particular, the evidence of copying this matter. And third, I want to address the board's finding with respect to the Watton reference, and that there's not substantial evidence for saying that Watton discloses treating water in the ballast tank when the ballast tank is at less than atmospheric pressure. Okay, so for purposes of our students, this case is about killing nasty stuff in the hull of a boat, right? Like zebra mussels and other nuisance species who are transported along with water. We don't want to release those into different water and let them take over. Correct, Your Honor. So, this patent is directed to reducing and or eliminating them. Yes, like let's say, for example, an oil tanker takes off from a port in the Middle East and comes to New York. There's different wildlife in these ports, and in order to balance out the load, they pick up and dump water when they're on and off load. And when they do so, in the harbor, there's inevitably aquatic species. What might be a native species in the Middle East may become a nuisance species in, let's say, New York Harbor, and that can have very detrimental effects on the wildlife. These are stowaways in the ballast tanks. Correct. And what the patent teaches is an innovative method of killing these aquatic nuisance species by inducing a phenomenon known as hypoxia and hypercapnia. Hypoxia causes death due to lack of oxygen, whereas hypercapnia causes death due to excessive levels of carbon dioxide. But those were both known phenomena, correct? Correct. The patent solution is creating a phenomenon where you induce both at the same time, so you can hopefully kill all the aquatic nuisance species. But, I mean, just as a general proposition, what's unobvious about combining two things that perform the function that they're already well known for accomplishing? Well, I mean, I think what it is, is the... Isn't that what the Supreme Court talked about in KSR? Well, here, what it is is a particular method of doing so. It's like to do them both simultaneously through an idea that the front of the audience discussed as a bubbling process where you're bubbling up concentrated carbon dioxide and gas-deprived oxygen levels, and ideally that would be from an inert gas generator. You're talking in terms of technology at a very high level, but let me try to make it simple, because Judge Lynn's question is exactly the same one I have. I could shoot you. Colonel Marksteiner in the back room could kill you with his pinky. If we both do it simultaneously, how is that an invention? We both are going to kill you, and we have the object of killing you. What is the advantage of... Why can you get a patent on the fact that we decided to do it together? By the way, I don't actually mean I'm going to kill you. Pete, I know you would do anything for me. He's our circuit executive. Don't kill the guy. All right, good. Well, thank you. The innovative solution here is that hypoxia may not kill all the aquatic nuisance species, and hypercapnia may not kill all the aquatic nuisance species, but when you induce both phenomena together, you're going to kill at least a satisfactory amount of the aquatic nuisance species. For example, with respect to the vertebrate hypoxia, the aquatic nuisance species could be anaerobic, which would mean that a deprived blood clot may have no effect on them. Now, for some of these, I have one technical question, since you are talking about the technical issues. Doesn't hypercapnia... Am I saying that right? Sure. Doesn't that necessarily or many times cause hypoxia at the same time? Because for hypercapnia, you're increasing the carbon dioxide, which I would think would necessarily decrease the amount of oxygen. Well, I... And there are some references that suggest that, even. There are some references that suggest that, and I don't believe the board made that as one of their findings of fact. But I'm just asking you. No, and I would like to point your honor to the declaration of Dr. Horst Felbeck. And... Is it... Will he... Will that answer my question? It... I mean, he explains that the... His declaration adds that APPX606, the hypoxia, results from environmental conditions that can be caused by the deprivation of oxygen, not relative to the abundance of carbon dioxide. And he also explains that it's not necessarily the... A decreased carbon dioxide environment does not necessarily mandate a... Excuse me. An increased carbon dioxide environment does not necessarily mandate a level of decreased oxygen that would induce hypoxia, which is the killing due to lack of oxygen. I still don't understand why a skilled artisan wouldn't just combine them. You know? I don't understand. Like, you haven't shown me what... Both of these things are intended to kill certain species. And they may both have different levels of effectiveness with different kinds of species. So why wouldn't... You've got a bunch of water. You know, why not use both of them? Like, I just don't understand why. They're both doing exactly what they're supposed to do, so why wouldn't you just use them both together? Well, I mean, I think that goes to what the patent talks about in using an inert gas generator. Whereas, I mean, you need some mechanism to create the conditions. For example, the patent talks about bubbling inert gas, which is a composition of nitrogen, oxygen, and carbon dioxide. The carbon dioxide levels heighten, and the nitrogen levels also might increase. And when you pump that through, that induces both conditions. For example, whereas compared to the prior art, let's say the Elzinga reference only discusses pumping carbon dioxide through, and the Watton reference in particular discusses pumping carbon dioxide... No, not pumping carbon dioxide, but injecting carbon dioxide at very high levels of pressure. But claim two, which is one of the claims at issue, doesn't have all of those limitations, right? That is correct, but based on the teachings of the patent art, you need to induce the phenomenon somehow, and what the patent teaches is that you use an inert gas generator. Oh, but wait a minute. You would certainly read this on any mechanism of killing the thing in the same way, right? I would think so. That's like saying one type of gun is different than another type of gun. I mean, if everybody knows they would all kill, and the claim only requires a gun, what difference does it make? Well, Your Honor, but you still need to be able to create the phenomenon somehow. But skilled artisans knew how to create the phenomenon. That's not the question. Your question here is whether you combine them all. Well, I also would like to point, Your Honor, to the Watton reference, which is directed at hypercapnia and describes the hypercapnia method as having a unique capability. Having a what? I'm sorry, I missed that. A unique capability of quite recent species, and in the background it even talks about how it's advantageous over hypoxia. It doesn't it also say at column 8, line 30, around 38, it says that the hypercapnia will actually result in hypoxia. Supersaturated concentrations of carbon dioxide cause stress and death. And then there's a parenthesis that says hypoxia. Correct, Your Honor, but I think there's two differences. As explained in the Dr. Horst's declaration in paragraph 7 on APBX 606, it is his view that the reference to hypoxia appears to be a mistake. Yes, but it references it. Expressly, and that's a question of fact. So I'm supposed to disregard the Board's substantial evidence, under substantial evidence, for a fact-finding it made about something a reference actually says, because your expert says he thinks the reference says it in a mistaken way. That is the quintessential sort of fact-finding body's job, and I'm in appellate court. Yes, Your Honor, but I'd also like to point out that the reference is not me personally, we. It's talking about the killing from hypoxia. And killing by hypoxia just means lack of oxygen. I'm not an expert, but I can imagine a scenario where you would be in an oxygen-rich environment, but you could still die from lack of oxygen. But again, all of that is Board fact-finding material. All of that. How it's used in this reference and what it teaches on a scale in the art is a fact-finding. And the Board made express and specific fact-findings about that reference. So you're calling them into question, and you seem like a smart guy. Maybe I would believe you if I got to decide that question fresh, de novo. But I don't. I've got to give deference to the Board's finding. Yes, and I understand that, but I think the Board erred in not even refusing to mention paragraph 7 of Dr. Orr's declaration. So you think the Board commits what, legal or factual error, when it doesn't actually address the evidence on the other side when it makes a fact-finding to the contrary? Where exactly do you think I put that? In what box? I don't put that in the legal error, failing to consider the reference. I should presume they failed to consider it because they didn't mention it in the opinion? Yes, Your Honor. Okay. Another legal error I wanted to touch on more is there are six different prior art references cited in the Board's decision. And they are disparate references. And the Board failed to make the necessary findings as to why it would have been obvious to combine the references. Instead, the Board merely criticized MH Systems for arguing the references, quote, separately. Isn't it simply permissible for the Board to cite disparate references as disclosing the entirety of a claim without explaining why a person born here still would have been motivated to combine them? Indeed, the obviousness and rationale cited in the quote cover brief are merely the statements of the examiner. From the Board, it merely recites these statements without stating whether or not the Board is adopting them. And just last week, a week ago today, when we came across this case in our preparation for it, in Icon Health v. Strava, this Court remanded an inter-parties re-examination decision where the Board failed to provide an evidentiary basis for its motivation to combine. And the Board also failed to explain its reasoning as to why a person born in Isco would have combined the references. As the Icon Health decision explains, the Board must explain why it adopted the prevailing argument. And the Board did not do so here. You're into your rebuttal time. Would you like to save the remainder? Yes, Your Honor. Okay, very good. Let's hear from the other side. Mr. Sidaway? Yes. Okay, Mr. Sidaway. Thank you, Your Honors. Okay, Mr. Sidaway, you have to address every single rejection. Go! Just kidding. Well, I'd like to begin by addressing something that each one of you brought up, which is what's obvious about these two known methods of killing, this ANS, this aquatic nuisance species, the hypocapnia and hypoxia. And I'd just like to add to the Court's discussion that the patent itself provides that not only are hypoxia and carbonation known, but their combination is also known methods of controlling this ANS. So it's not only a question of whether... Whether Watton discloses it, for example, because the 859 discloses it on its own face, and that is further support for the Board's fact-finding about Watton. That's exactly right. Did the Board refer to that at all? It did. That's fact-finding number 1A. And fact-finding number 1B is similar, very closely related. And not only that, but this statement that's fact-finding 1A and 1B also cites the references that are used as part of the rejection. So it cites the McMahon reference, for example, and it cites the Tambori reference. And so it shows that a person born in Expelliarmus, in reading these references, understands not only that hypoxia and hypercapnia work to control ANS, but that one could use them together and could induce these two conditions simultaneously, as I think you brought up, by using inert gases, combustion gases from onboard sources on the ship, from the exhaust fumes that were already there. So this patent doesn't create a new way to, for example, induce hypoxia. It's not a new way. It's not like they found a new machine or a new method of creating this condition. Did they? I mean, is that what's claimed? No, it is not claimed. That is not claimed at all. Because he kind of suggested that. I suggest if you look at the spec, they claimed a very specific and sort of different, possibly even novel way of doing it. But when Judge Lynn pointed to Claim 2, none of those elements are certainly there. I know there are a lot of claims at issue. Are those elements present in one of the other claims that are on appeal to us, such that maybe there is a basis for coming out different ways on different claims? Not significantly. Most of the claims, let me start with Claim 2, and I'll work out from there. Claim 2 requires the induction of a hypercaffeine, hypoxia, as well as a certain reduction in pH and a certain concentration of carbon dioxide. But it doesn't tell you how to do it, really, other than it says infuse carbon dioxide into the balance. That's exactly right. And most of the claims are along those same lines. So any known method of doing this would, if used in triple, infringe? That's correct. Now, I will say that a couple of the claims do have, it talks about bubbling these gases up through the ballast water, for example, which is a little more structural. However, the Board absolutely addresses that in its findings of fact. Claims 16 and 15 are examples of bubbling the gaseous mixture through the ballast water. Was that taught by any particular reference, and if so, which one? I can point to finding of fact 5D. Elzinga, is that what that one is? That's actually McMahon, which is used in Rejection 6. But it states, due to its ability to form wheat gases in the salt water, medium bubbles with gases containing elevated concentrations of carbon dioxide will also have a reduced pH. There are other... Finding of fact 5E, also McMahon discloses, permanent tints in water as a mollicide using micro-bubbling sparcher systems. And there is another... Okay, I have a dumb question. Is the bubbling for the hypercapnia or for the hypoxia, or both? I would say the bubbling is tied to either condition. The condition, the bubbling of this gas, which is a combination of nitrogen, oxygen, and carbon dioxide, is the by-product of combustion. That gas is bubbled through water, and it creates both conditions simultaneously. That both conditions can happen simultaneously is also the product of several fact findings, including McMahon, which discusses both hypercapnia and anoxia, which is a complete elimination of oxygen, as well as normoxia, which is normal oxygen conditions. But Elzinga describes creating both conditions together, as does the Watton reference, which is in the product of a great deal of discussion. Are there any other questions on the board's finding of obviousness? In particular, all we've been discussing are the content of the prior work. That's all that's been discussed in the hearing today. It's what is discussed in the briefs. The standard there, as the court has already raised, is are these fact findings supported by substantial evidence? Did the board support its findings of what the prior art held with substantial evidence? I'll just leave the court on this point with the patent itself, I think, is the greatest evidence of that substantial evidence by the board. I'd like to turn to their secondary considerations of non-obviousness briefly. In particular... The only one he mentioned was copying. Yes. And he didn't really get a chance to address it. So any ones that you addressed, you opened the door and rebuttaled to discussing. Feel free to go forward. No, Your Honor, since it wasn't raised for the court, if there are no further questions, I'll... Because it's covered in the briefs. Yes. Very good. Good choice. Okay. We have some rebuttal time. Make it two minutes. Thank you, Your Honor. Just a couple of points. First off, Counsel for Cold Harbor, I believe, referenced the statement in fact finding 1A, I believe it was. 1A and I think 1B. You hit on both. About the statement made in the background. There's been no finding that the board considered that to be, quote, admitted prior art. And statements in the background of the patent are not necessarily, should not necessarily be considered being admitted prior art without sufficient statements signifying that. And second, I want to leave, Your Honor, to ask a question of whether or not the patent is limited to just the phenomenon of inducing hypoxia and inducing hypercapnia. Cold Harbor referenced Claim 4, which discusses bubbling, but I'd also like to point out Claim 5, which claims bubbling water when the ballast tank itself is, when the u-width space above the ballast tank is being kept at less than atmospheric pressure. No single reference teaches that, and with respect to Rejection 6, which is the one where Claim 5 is subject to, the Elzinga reference is what is disclosed as being that limitation. Rejection 6 actually cites McMahon. McMahon, or however you say it. With respect to the Claim 5, I believe Rejection 6 cites Elzinga or Watton as discussing the below atmospheric pressure. I know. I just don't have Elzinga at all. I have Watton, McMahon, and Millwee as the Rejection 6 elements. Excuse me, I meant to say Watton instead of Elzinga. Okay, got it. That's all. Look, it's hard to keep all these things straight, but I think I have a nice little chart here that does it, so I'm trying to follow. So Watton, you believe they cite Watton for that, and you don't think. It discloses gas liquid containing at pressures above, at, or below local atmospheric pressure at page A10. So are you saying that that fact-finding is not supported by substantial evidence? Correct, Your Honor. Because the entire purpose of Watton, if you take a look at the abstract, is that Watton is talking about pressurizing carbon dioxide and pumping the ballast water into an absorber. It is not treating the water while it is in the ballast tank. And the point is the board cites Watton as facilitating that limitation, and it's our view that that amounts to being a finding of that not being supported by substantial evidence. Okay, is there anything further? Because we're out of time, so if you have a wrap-up sentence, let's roll it out. I think that covers it. I think, again, the rest of it should be covered in our brief. Okay. I thank both counsel. This case is taken under submission, and that concludes our hearings for today.